DECISION
The Plaintiffs, certain Warwick pension recipients, request a declaratory judgment and injunctive relief regarding a reduction in benefits they were receiving. In 1995, the City of Warwick reduced the pension benefits paid. The Plaintiffs filed a Motion for Declaratory Judgment. The Defendants, City of Warwick and officials thereof (hereinafter collectively "the City"), filed a Cross-Motion for Declaratory Judgment and for Summary Judgment. For the following reasons, the Court awards Plaintiffs declaratory relief.
 Facts
Plaintiffs are retired Deputy Chiefs and widows of retired Deputy Chiefs of the Warwick Fire Department. All receive pension benefits from the City of Warwick in varying amounts based upon their years of service in the department and other factors, including whether the individual retired due to disability. Pursuant to an "escalation clause" in the Warwick Firefighters' Pension Ordinance, the Plaintiffs also received additional benefits whenever active Deputy Chiefs in the department received a salary increase.[1] *Page 2 
On July 5, 1995, the City decreased the salary of the active Deputy Fire Chiefs. Each Plaintiff then received a letter from the City Treasurer notifying him or her that "due to a recent change of the pension, your regular semi-monthly pension payment has been reduced. . . ." The change became effective July 15, 1995.
On May 13, 1996, Ordinance No. O-96-18 recodified and renumbered the "Firefighters' Pension Fund." Section 20-116, labeled "Indexation of benefits" now contained the "escalation clause," and provided:
 Whenever salary indexes are granted to the base pay, holiday pay, or longevity pay of active employees, corresponding percentage increases shall be made to the base pay, holiday pay, and longevity pay components of benefits payable to retired members and beneficiaries under sections 20-111, 20-112 and 20-113, but not section 20-114.
Additionally, section 20-91 of the recodified ordinances entitled "Definitions" provided, in relevant part: "Effective date means May 29, 1992, the effective date of this restatement [amendment]." (emphasis in original.)[2]
 Travel
Plaintiffs filed the within action seeking declaratory and injunctive relief. The Amended Complaint alleges, inter alia, ". . . the failure by the Defendants to apply percentage pay *Page 3 
increases based upon the pay provided to active duty personnel in the classification of Deputy Chief constitutes a violation of Title 15, Article III, Section 20-116 of the Code of Ordinances of the City of Warwick." (Plaintiffs' Complaint at para. 33.)
The case has had an extensive travel, including removal to federal court.[3] After attempts at settlement failed, plaintiffs filed a motion for declaratory judgment, stating that "[t]he sole issue before this court is the interpretation of the Warwick city ordinances governing plaintiffs' corresponding percentage increase benefits from July 15, 1995 to March 8, 1999". (Plaintiffs' Memorandum at p. 2.) The Plaintiffs asked the Court to declare that the defendants illegally reduced plaintiffs' pension benefits. The City objected, and filed a Cross-Motion for Declaratory Judgment and Summary Judgment.
At a hearing on October 10, 2006, this Court allowed this case to be bifurcated as to damages, and proceeded with the issue of liability. Plaintiffs filed an Amended Complaint on February 23, 2007. Motions (on the issue of liability) came on for hearing on the issue of liability on September 24, 2007 and October 3, 2007. The parties provided supplemental memoranda. *Page 4 
 Standard of Review
The Uniform Declaratory Judgments Act vests the Court with "the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." G.L. 1956 § 9-30-1. The Court strives "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Section9-30-12; see also Capital Properties, Inc. v. State, 749 A.2d 1069, 1080
(R.I. 1999) (citations omitted). In order for the Court to exercise its jurisdiction under the Uniform Declaratory Judgments Act, an actual, justiciable controversy must be before it. Meyer v. City ofNewport, 844 A.2d 148, 151 (R.I. 2004).
 Analysis
Plaintiffs argue that the only clause in force when the City reduced the benefits was the original section 7-76 and that provision prevents the City from reducing Plaintiffs' pension benefits. Plaintiffs contend that the revised ordinances cannot provide the basis for retroactively justifying unlawful actions, so the 1996 and 1999 modifications to the pension fund's escalation clause have do not effect the City's July 1995 reduction. (Plaintiffs' Supplemental Memorandum at 6-7.)
Defendants, in a reply memorandum, note that section 20-91 defined the effective date of the restatement (amendment) as May 29, 1992, which was before the Plaintiffs' benefits were reduced.
The only issue before the Court was whether the 1995 reduction in pension benefits was appropriate. According to the facts, the salary was not reduced at any other time; hence, no other corresponding reduction in benefits occurred. *Page 5 
The Court views an ordinance in accordance with established rules of statutory construction. "It is well settled that the rules governing statutory interpretation are equally applicable to the interpretation of an ordinance." Jones v. Rommell, 521 A.2d 543, 544-545 (R.I. 1987);see also Mongony v. Bevilacqua, 432 A.2d 661 (R.I. 1981). Our Supreme Court has held that "`when the language of a statute is clear and unambiguous, we must enforce the statute as written by giving the words of the statute their plain and ordinary meaning.'" Park v. Rizzo Ford,Inc., 893 A.2d 216, 221 (R.I. 2006) (quoting Gem Plumbing Heating Co.v. Rossi, 867 A.2d 796, 811 (R.I. 2005)). "[I]n the absence of an ambiguity, this court must give the words of the statute `their literal and plain meaning.'" State v. Lough, 899 A.2d, 468, 470 (R.I. 2006) (quoting State v. Oliveira, 432 A.2d 664, 666 (R.I. 1981)). "When a statute is ambiguous, however, we must apply the rules of statutory construction and examine the statute in its entirety to determine the intent and purpose of the Legislature." Harvard Pilgrim Health Care ofNew Eng., Inc. v. Rossi, 847 A.2d 286, 290 (R.I. 2004).
The City claims that it was empowered to reduce pension benefits in 1995. Section 7-76 of Chapter 7, Article IV as amended by Ordinance No. O-89-46, § 1(3) was in effect at the time:
 Whenever salary increases are granted in the fire department for active members, a corresponding percentage increase shall be granted in the pension amounts of those officers and members who have retired.
In 1995, salary increases were not granted to the active members. Hence, there was no corresponding percentage increase. The plain language of the ordinance only allows for corresponding percentage increases, not any decreases. Section 7-76 did not allow the City to reduce the pension benefits. *Page 6 
The City also relies on a later ordinance, with purported retroactive application, to justify its decrease to the pensioners. The recodification of 1996 stated in part:
 Whenever salary indexes are granted to the base pay, … of active employees, corresponding percentage increases shall be made to the base pay … components of benefits payable to retired members and beneficiaries …" Ordinance No. O-96-18, Section 20-116. (Emphasis added.)
This provision had an effective date of May 29, 1992, which would retroactively make it applicable to the 1995 reduction.
Following the same principles of statutory construction, the Court does not need to look beyond the plain language of the ordinance. As the ordinance states, "when indexes are granted … increases shall be made." The ordinance explicitly allows for increases not decreases. Even if the ordinance had retroactive effect, it would not decrease the pension benefits.
Although this Court finds absolutely no ambiguity in the ordinance, one could argue that the phrase "Whenever salary indexes are granted . . ." may be ambiguous. Using the word "salary" as an adjective to modify the noun "indexes" creates a phrase that is challenging to construe. However, "this Court will not broaden statutory provisions by judicial interpretation unless such interpretation is necessary and appropriate in carrying out the clear intent or defining the terms of the statute." State v. Santos, 870 A.2d 1029, 1032 (R.I. 2005) (quotingSimeone v. Charron, 762 A.2d 442, 448-49 (R.I. 2000)). In Trant v.Lucent Technologies, 896 A.2d 710, 712 (R.I. 2006), the high court clearly set the primary goal in interpreting ambiguous statutes:
 We previously have said that, "[i]f statutory provisions appear unclear or ambiguous, * * * we shall examine the entire statute to ascertain the intent and purpose of the Legislature." Jeff Anthony Properties v. Zoning Board of Review of North Providence, 853 A.2d 1226, 1230 (R.I. 2004) (quoting Cummings v. Shorey, 761 A.2d 680, 684
(R.I. 2000)). Such an inquiry requires us to "determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes." Oliveira v. *Page 7 Lombardi, 794 A.2d 453, 457 (R.I. 2002) (quoting Brennan v. Kirby, 529 A.2d 633, 637 (R.I. 1987)).
The clear language of the ordinance and its obvious intent, viewed in its entirety allows for "corresponding increases" not decreases, so the Court does not need to delve any further on this issue.
There are other issues of potential significance here. The 1999 amendment to section 20-116 could empower the City to decrease the pension, but it does not appear to have retroactive effect; hence, it is of no assistance in construing the legality of the 1995 pension decrease. The Court could speak to the retroactive effect of all ordinances, and the Constitutional implications of the retroactivity.[4] However, the matter is before the Court for the limited purpose of rendering a Declaratory Judgment. This power is discretionary. Section 9-30-6. As the Rhode Island Supreme Court reminded us in Chambers v. Ormiston, Case No. 06-340, Dec. 7, 2007, Slip Opinion, pg. 14: "The role of the judicial branch is not to make policy, but simply to determine the legislative intent as expressed in the statutes enacted by the General Assembly."
The ordinance did not empower the City to decrease the Plaintiffs' benefits in 1995. Accordingly, the Plaintiffs are entitled to declaratory relief reversing the action taken by Defendants in July of 1995.
 Conclusion
For the reasons stated above, Plaintiffs are entitled to the following declaratory relief:
 1. The reduction in Plaintiffs' benefits in July of 1995 was void, as the Defendants' were without the power to unilaterally make such a change. *Page 8 
 2. The Plaintiffs' are entitled to have their individual benefits reinstated to the level immediately preceding the decrease imposed on or about July 15, 1995.
 3. All other issues are to be resolved during the "damages" phase of this proceeding. Plaintiffs' counsel shall prepare an appropriate order for entry.
[1] On October 16, 1958, the City of Warwick enacted Chapter 7, Article IV, "Firemen's Pension Fund" pursuant to G.L. 1956 § 45-19-1 et. seq., creating a pension list and a pension fund for permanent members of the fire department of the City. Section 7-76 of Chapter 7, Article IV labeled "Pension amounts generally," (hereinafter" § 7-76") as amended by Ordinance No. O-89-46, section 1(3), on December 11, 1989, contained, inter alia, an "escalation clause" which provided "Whenever salary increases are granted in the fire department for active members, a corresponding percentage increase shall be granted in the pension amounts of those officers and members who have retired."
[2] On March 8, 1999, the City Council amended section 20-116 again, but for reasons discussed herein, the 1999 amendment is irrelevant. The new ordinance reads, in part:
 Whenever changes occur in salaries, holidays or longevity pay of active employees, corresponding changes shall be made to the salary, holiday or longevity component of benefits paid to retired members and beneficiaries under sections 20-111, 20-112 and 20-113, but not section 20-114.
[3] The case was removed to the United States District Court for the District of Rhode Island for adjudication of the Plaintiffs' federal claims. A United States Judge Magistrate considered cross-motions for summary judgment, and on March 23, 1999, issued a Report and Recommendation granting Defendant City's motion for summary judgment, holding generally that Plaintiffs' federal claims must fail because adequate remedies existed under state law. "On April 20, 1999, an order was entered by the Chief Judge of the U.S. District Court accepting and adopting the recommendation and granting Defendants' motion for summary judgment as to "plaintiffs' claim under 42 U.S.C. § 1983." The order also provided that "[t]he state law claims remaining are dismissed without prejudice."
Over four years later, on June 11, 2003, Plaintiffs filed a motion to reopen the within action and assign it to the trial calendar. Defendants objected on the grounds that, pursuant to 42 U.S.C. § 1446(d), once a case is removed to Federal Court, the State Court shall proceed no further unless and until the case is remanded. On June 23, 2003, another justice of this Court granted the Plaintiffs' motion to reopen this case. After attempts at settlement failed, the parties narrowed the issues and filed the motions now pending.
At a hearing on October 10, 2006, the Court allowed this case to be bifurcated as to damages, and continued the hearing on liability to allow Plaintiffs to amend their complaint. On February 23, 2007, Plaintiffs filed an Amended Complaint referring to section 7-76. The parties provided supplemental argument and memoranda.
[4] See, e.g., Landgraf v. USI Film Products, 511 U.S. 244;114 S. Ct. 1483; 128 L. Ed. 2d 229; 1994 U.S. LEXIS 3292; 62 U.S.L.W. 4255; (1994) and its progeny. *Page 1