BETHLEHEM REBAR
INDUSTRIES, INC.

v.

FIDELITY AND DEPOSIT COMPANY
OF MARYLAND.

No. 89–206–Appeal.

Supreme Court of Rhode Island.

Nov. 19, 1990.

Joseph T. Reale, Jr., Visconti & Petrocelli, Ltd., Providence, for plaintiff.

Cornelius J. Moynihan, Jr., Peabody & Brown, Boston, Mass., Sue Zanne Worrell, Peabody & Brown, Providence, for defendant.

OPINION

MURRAY, Justice.

This case concerns the plaintiff's claim on a materialman's bond as furnished by the defendant, Fidelity and Deposit Company of Maryland (Fidelity). The plaintiff, Bethlehem Rebar Industries, Inc. (Bethlehem), is appealing the grant of Fidelity's motion to dismiss under Rule 12(b)(6) of the Superior Court Rules of Civil Procedure.

The construction involved in this case is the erection of the State Administrative Building (project) located in Providence, Rhode Island. Gilbane Building Company (Gilbane) was hired by the State either as a construction manager (according to Bethlehem) or as a general contractor (according

to Fidelity).[1]  In any event, Gilbane entered into a contract with a company called Raymond G. Mansour, Inc. (Mansour), to provide "all concrete work including reinforcing steel, and form work related to the placement of isolated footings, continuous footings, and elevator pits." Gilbane–Mansour Contract, article 1.1 (contract). Mansour was required to post a performance bond and a labor and material bond as part of the contract. *See* contract, article 6.1.  Mansour purported to comply with clause 6.1 by purchasing a Subcontract Labor and Material Payment Bond with Fidelity.  Mansour in turn contracted with B & F Contracting (B & F) to provide the labor and materials for the concrete work.  To complete the chain of parties, B & F contracted with Bethlehem to supply the steel reinforcing rods for use in the concrete footings.

The problem in this case stems from the fact that Mansour paid B & F but B & F went bankrupt before paying Bethlehem. Therefore, Bethlehem asserted a claim against Mansour's surety, Fidelity. The reason this case is before us is that the bond Mansour purchased from Fidelity expressly states that the bond inures only to the benefit of those having a direct contractual relationship with Mansour.  Of course here Bethlehem contracted with B & F and thus it has no direct contract with Mansour.

## Proceedings Below

In Fidelity's Rule 12(b)(6) motion to dismiss, it argued that the express terms of the bond exclude Bethlehem as a beneficiary.  In response, Bethlehem argued that the statutory provisions of G.L.1956 (1984 Reenactment) §§ 37–12–1, 37–12–2, and G.L.1956 (1984 Reenactment) § 34–28–30 override the express terms of the bond. The trial court did not address § 34–28–30 but rather focused on §§ 37–12–1 and 37–12–2.

Section 37–12–1 states:

"Contractors required to give bond—Terms and conditions.—Every person (which word for the purposes of this chapter shall include a co-partnership, a number of persons engaged in a joint enterprise or a corporation), before being awarded by the department of transportation or by the department of administration, as the case may be * * * a contract for the construction, improvement, completion or repair of any public building, or portion thereof, shall be required to furnish to the respective department a bond of such person to the state, with good and sufficient surety or sureties (hereafter in this chapter referred to as surety) * * * conditioned that the contractor, principal in said bond * * * shall * * * promptly pay for all such labor performed or furnished and for all such materials and equipment furnished * * * as shall be used in the carrying on of the work covered by the contract, or shall see that they are promptly paid for * * * whether or not said materials are furnished to the contractor or become component parts of said work * * * ."

Section 37–12–2 states:

"Rights of persons furnishing labor and materials.—Every person who shall have performed such labor and every person who shall have furnished or supplied such labor, material or equipment in the prosecution of the work provided for in such contract, in respect of which a

---

**1.** According to Bethlehem, the rising use of a construction manager (CM) is a new development in the construction industry.  In simplest terms, the purported difference between the CM and a general manager is that the CM acts as a mere agent for a project's owner and that he engages "trade contractors" in his principal's name to perform most or all of the actual work. *See generally* 1 Stein, *Construction Law* ¶ 5. 03.-[1][b] and [c], [2], [3] at 5–79 to 5–85 (M.B. 1989).  This is in distinction to a general contractor who is in the chain of liability and who hires "subcontractors" in his own name to perform work. *Id.* at 5–81.  There are many variations on the CM role, and often it is difficult to distinguish between a CM and a general manager. *Id.* Therefore, the mere self-serving label of CM or general contractor will not in and of itself determine a party's legal status.  Moreover, we do not express a view on the purported differing legal liabilities of a CM and a general contractor. *See generally id.* at 5–79 to 5–85. *See also Gateway Erectors Division of Imoco–Gateway Corp. v. Lutheran General Hospital,* 102 Ill.App.3d 300, 302–04, 58 Ill.Dec. 78, 80–81, 430 N.E.2d 20, 22–23 (1981).

payment bond is furnished under § 37–12–1, and who has not been paid in full therefor before the expiration of a period of ninety (90) days after the day on which the last of the labor was performed or furnished by him, or material or equipment furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him * * *."

The purpose addressed in § 37–12–1 is to ensure that materialmen on state construction projects get paid, because a materialman's lien cannot be asserted against state property. *See* § 34–28–31. It is clear from the transcript that the trial court thought that since only the "person awarded" a contract need post a § 37–12–1 bond, Bethlehem's claim rested on the question of who may be properly characterized as the project's general manager—Gilbane or Mansour. It is evident that the trial court believed the only way the bond's express-privity restriction could be ignored would be if Bethlehem could assert rights under § 37–12–2 and if Mansour could be characterized as a general contractor under § 37–12–1.

The trial justice held two hearings to consider Fidelity's motion. Fidelity submitted an affidavit from Raymond G. Mansour of Raymond G. Mansour, Inc., who therein denies that Mansour was the general contractor and he alleges that Gilbane was the general contractor. In rebuttal, Bethlehem submitted the affidavit of William G. Bryan, the project manager for Gilbane. Bryan states that the project did not have a general contractor and that Gilbane merely served as a construction manager. The trial justice weighed the conflicting allegations as stated in the affidavits and *sub silentio* found Gilbane the general contractor.

## Standard of Review

■ Although the trial justice was not obligated to consider the affidavits offered by the parties in ruling on Fidelity's Rule 12(b)(6) motion, *Menzies v. Sigma Pi Alumni Ass'n*, 110 R.I. 488, 489, 294 A.2d 193, 194 (1972), having done so, Fidelity's motion was automatically converted into a Rule 56 motion for summary judgment. *See* Rule 12(b). *See also Palazzo v. Big G Supermarkets, Inc.*, 110 R.I. 242, 244–45, 292 A.2d 235, 237 (1972). Hence, the trial justice committed error by continuing to treat Fidelity's motion as a motion to dismiss and by granting it as such. We shall therefore undertake our review as if the trial justice had granted a Rule 56 motion for summary judgment. Accordingly, the scope of our review is the same as if we were the trial justice; we review the pleadings and affidavits in the light most favorable to Bethlehem to see whether a genuine issue of material fact exists. *See Steinberg v. State*, 427 A.2d 338, 340 (R.I. 1981).

## Who Is the General Contractor?

■ Assuming we were to agree that the question of who is the general contractor is dispositive in this case, we think it clear that summary judgment should not have issued. The question of agency is "an issue of fact to be submitted to the trier of fact under appropriate applicable legal principles." *Etheridge v. Atlantic Mutual Insurance Co.*, 480 A.2d 1341, 1346 (R.I. 1984). Therefore, the characterization of Gilbane or Mansour as the general contractor (that is, the type of agency vis-à-vis the State) is clearly a question of fact. It was not within the purview of the trial justice, in ruling on a motion for summary judgment, to choose between conflicting affidavits concerning who was the project's general contractor. Therefore, the trial justice erred in granting Fidelity's motion for summary judgment.

## Bethlehem States a Cause of Action under G.L.1956 (1984 Reenactment) § 34–28–30

■ In opposition to Fidelity's motion to dismiss, Bethlehem asserted that aside

from chapter 12 of title 37, it states a cause of action under § 34–28–30.

Section 34–28–30 states:

"Suit on bond to secure payment.—If any bond be given to secure payment for work done or materials furnished on account of the construction * * * of any building * * * such bond shall enure to the benefit of any person who does any work in the construction * * * thereof, or who furnishes any materials used in the same, and such person doing such work or furnishing such materials may bring suit in his own name on such bond against any party thereto * * * notwithstanding the fact that he is not a party to such bond or to such contract * * * and, further, notwithstanding the fact that he did not know of or rely on such bond or give any notice to the surety on such bond, and further, notwithstanding the fact that he did work or furnished materials for use on any subcontract, mediate or immediate, to such contract between such owner or lessee or tenant and such other person."

Bethlehem cites *Providence Electric Co. v. Donatelli Building Co.*, 116 R.I. 340, 346, 356 A.2d 483, 486 (1976), for the proposition that it may maintain an action under § 34–28–30 regardless of the remedy that may be available to it under chapter 12 of title 37. We agree. As we stated in *Donatelli*, "[T]he intent of the Legislature in enacting §§ 34–28–30 and 34–28–31 was to provide a remedy for a supplier of labor and/or material to recover on a bond, said remedy to be in addition to the remedy provided for in chapter 12 of title 37 * * * ." 116 R.I. at 346, 356 A.2d at 486.

Therefore, even assuming Gilbane is a general contractor under § 37–12–1 and that therefore (assuming the trial court's interpretation) Bethlehem cannot recover under § 37–12–2, it is clear that Bethlehem states a cause of action under § 34–28–30. For these reasons summary judgment should not have been entered for Fidelity. *See also Atlantic States Cast Iron Pipe Co. v. Forte Bros., Inc.*, 474 A.2d 1250, 1251 (R.I.1984).

The plaintiff's appeal is sustained. We reverse the trial court's judgment granting Fidelity's motion for summary judgment and remand the case for proceedings not inconsistent with this opinion.