**AIR DISTRIBUTION CORP.**

v.

**AIRPRO MECHANICAL COMPANY, INC., et al.**

No. 2008–113–Appeal.

Supreme Court of Rhode Island.

June 29, 2009.

Jessica L. Papazian–Ross, Esq., Providence, for Plaintiff.

John F. Lusi, Esq., Smithfield, for Defendant.

Present: GOLDBERG, Acting C.J., FLAHERTY, SUTTELL, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Justice ROBINSON for the Court.

One of the defendants in this case, Hartford Accident and Indemnity Company (Hartford or defendant), appeals from the Superior Court's grant of summary judgment in favor of the plaintiff, Air Distribution Corp. (Air Distribution or plaintiff). This case concerns the plaintiff's allegation that it was never paid for certain goods that it supplied to a subcontractor for a public building project. As a result of this nonpayment, the plaintiff filed a complaint against the defendant Hartford and codefendant Airpro Mechanical Co., Inc. (Airpro). In that complaint, a count for breach of contract and a count of unjust enrichment were directed against codefendant Airpro, while a third count (concerning a performance and payment bond) was directed against the defendant Hartford.

On March 13, 2007, the Superior Court heard and granted plaintiff's motion for summary judgment. The hearing justice's ruling was predicated on this Court's frequently articulated interpretation of G.L. 1956 §§ 37–12–1, 37–12–2, G.L. 1956 §§ 34–28–30, and 34–28–31. Final judgment was entered on November 2, 2007, and Hartford timely filed the instant appeal.

On appeal, Hartford's sole argument is that this Court should overturn its longstanding precedent addressing the meaning of several sections of our General Laws concerning the legal recourse available to unpaid subcontractors against the sureties of general contractors engaged in public building projects. We decline to do so, and we therefore affirm the judgment of the Superior Court.

### Facts[1] and Travel

In September of 2004, the state entered into a $3,987,000 construction contract with general contractor A.F. Lusi Construction, Inc. for construction of the Blackstone Val-

---

1. The facts set forth in this opinion have been adduced from the hearing on defendant's motion for summary judgment and from the record submitted to this Court.

ley Gateway Center in Lincoln, Rhode Island. Pursuant to § 37–12–1, Hartford acted as surety for A.F. Lusi by issuing a surety bond to ensure payment.[2]

The plaintiff is a distributor of heating, ventilating, and air conditioning (HVAC) products, and it provided HVAC products for use in the Blackstone Valley Gateway Center. Said products were procured by, and delivered to, defendant Airpro Mechanical. Airpro was a subcontractor to Miller Mechanical, Inc. which was, in turn, a subcontractor to A.F. Lusi.[3] Invoices in the record reflect that products costing a total of $16,626.95 were supplied by Air Distribution to Airpro between May 23, 2005 and August 31, 2005.

Within ninety days of the date of the issuance of the last invoice, Air Distribution provided written notice to A.F. Lusi as the principal on Hartford's payment bond. The notice was in the form of two facsimiles dated October 5, 2005 and November 16, 2005. Each facsimile detailed the outstanding monies owed to Air Distribution for products delivered for use in the Blackstone Valley Gateway Center project. The principal and owner of A.F. Lusi acknowledged the facisimile, confirmed the amount due to Air Distribution, and promised that plaintiff would be paid. To date, Air Distribution has not received any payment.

In January of 2006, plaintiff commenced the instant lawsuit against Airpro and Hartford (as the surety on the general contractor's payment bond) to recover the outstanding monies owed for the HVAC products delivered by Air Distribution.

In May of 2006, plaintiff filed an amended complaint. Count one (breach of contract) and count two (unjust enrichment) of the amended complaint were directed against Airpro; those counts concerned the subcontracts plaintiff had with Airpro for the supply of HVAC products. Count three of the amended complaint was directed against Hartford. Air Distribution stated that it was entitled to payment of outstanding monies owed by Airpro under the bond issued by Hartford for the Blackstone Valley Gateway Center project. Soon after the lawsuit was filed, Airpro went into receivership.

The only defense raised by Hartford in its answer to Air Distribution's complaint was that plaintiff was barred from recovery by virtue of Chapter 12 of title 37 of the General Laws. Hartford's argument (developed more fully in later arguments before the Superior Court) was essentially twofold. First, Hartford contended that Air Distribution is not a proper party for recovery under § 37–12–2 because it is a "Tier 3" subcontractor.[4] Second, it argued

2. General Laws 1956 § 37–12–1 requires with respect to any project costing in excess of $50,000 that any person who contracts with the Department of Transportation or the Department of Administration and who is awarded such a contract as a general contractor or construction or project manager furnish a surety bond to the state.

3. In the chain of contractors and subcontractors, A.F. Lusi Construction, Inc. served as the general contractor; Miller Mechanical, Inc. was a "Tier 1" subcontractor; Airpro Mechanical Company, Inc. was a "Tier 2" subcontractor; and Air Distribution Corporation was a "Tier 3" subcontractor.

4. Before the Superior Court, as well as on this appeal, Hartford suggested that a "Tier 3" subcontractor is not entitled to make a claim against the payment bond that Hartford issued to the general contractor pursuant to the terms of § 37–12–2. Said section provides, in pertinent part:

"[A]ny person having a direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing the payment bond shall have a right of action upon the payment bond upon giving written notice to the contractor within ninety (90) days from the date on which the person * * * fur-

that Air Distribution failed to provide notice of its claim on the bond as required by § 37–12–2–specifically, Hartford accurately notes that plaintiff failed to provide the principal on the bond (A.F. Lusi) with notice of plaintiff's claim within ninety days *by certified mail* as required by that section of the General Laws.

The plaintiff filed a motion for summary judgment against Hartford pursuant to Rule 56(b) of the Superior Court Rules of Civil Procedure. The plaintiff indicated that it was pursuing its claim against Hartford under § 34–28–30 and § 34–28–31, as opposed to § 37–12–2. It asserted that, pursuant to this Court's well-settled precedent, it was entitled to bring suit against Hartford and to receive summary judgment in the matter because the requirements of § 37–12–2 were inapposite.

A hearing on the motion was held before the Superior Court on March 13, 2007. At that hearing, the hearing justice indicated that she agreed with Hartford's arguments concerning the interpretation of the statutes at issue; nevertheless, she indicated that she was bound by the precedent of this Court, which clearly states that a subcontractor can pursue remedies of a payment bond under § 34–28–30. For this reason, the hearing justice granted summary judgment in favor of plaintiff. An order granting summary judgment against Hartford was entered on March 29, 2007. Partial final judgment was entered on November 2, 2007 pursuant to Rule 54(b) of the Superior Court Rules of Civil Proce-

dure.[5] Hartford timely filed its appeal to this Court.

On appeal, Hartford's solitary argument is that this Court should reverse its well-settled precedent concerning the ability of a subcontractor to recover on a payment bond pursuant to § 34–28–30 and § 34–28–31. We decline to do so and hereby affirm the judgment of the Superior Court.

## Standard of Review

■ This Court reviews the granting of a motion for summary judgment on a *de novo* basis. *Planned Environments Management Corp. v. Robert,* 966 A.2d 117, 121 (R.I.2009); *Cullen v. Lincoln Town Council,* 960 A.2d 246, 248 (R.I.2008). In reviewing a hearing justice's decision to grant summary judgment, this Court employs the same standards as were used by the hearing justice. *Robert,* 966 A.2d at 121. Having conducted that review, we "will affirm such a decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Credit Union Central Falls v. Groff,* 966 A.2d 1262, 1267 (R.I.2009) (internal quotation marks omitted). It should also be borne in mind that "the party opposing a summary-judgment motion has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opin-

nished or supplied the last of the material or equipment for which the claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom * * * the material or equipment was furnished or supplied." Section 37–12–2.

5. The hearing justice did not enter judgment pursuant to Rule 54(b) of the Superior Court

Rules of Civil Procedure until the liability of Airpro was established. Airpro did not contest plaintiff's motion for summary judgment against it. An order granting summary judgment in favor of plaintiff against Airpro was entered on November 2, 2007. Execution against Airpro was stayed, and any recovery against Airpro would be governed by the receivership proceeding.

ions." *Id.* (internal quotation marks omitted).

## Analysis

■ For more than three decades, this Court has on several occasions been called upon to construe the provisions of §§ 34–28–30 and 34–28–31 of the General Laws, and it has each time concluded that the legislative intent as expressed in those statutes was "to provide a remedy for a supplier of labor and/or material to recover on a bond, said remedy to be in addition to the remedy provided for in chapter 12 of title 37, and * * * a claimant under §§ 34–28–30 and 34–28–31 is not required to comply with the notice provisions of chapter 12 of title 37." *Providence Electric Co. v. Donatelli Building Co.*, 116 R.I. 340, 342, 356 A.2d 483, 486 (1976).

In several subsequent cases, we have endorsed the holding in *Providence Electric Co.* and have repeatedly reaffirmed our interpretation of §§ 34–28–30 and 34–28–31. *See, e.g., Extrusions Inc., Win–Vent Division v. National Grange Mutual Insurance Co.*, 824 A.2d 439 (R.I.2003); *Bethlehem Rebar Industries, Inc. v. Fidelity and Deposit Co. of Maryland*, 582 A.2d 442 (R.I.1990); *Providence Electric Co. v. Diso Corp.*, 440 A.2d 751 (R.I.1981) (mem.); *Vaudreuil v. Nelson Engineering and Construction Co.*, 121 R.I. 418, 399 A.2d 1220 (1979).

■ We have previously emphasized, and here reiterate, that the remedies provided under chapter 12 of title 37 and chapter 28 of title 34 are *alternative* remedies. The fact that a party cannot recover under § 37–12–2 does not bar it from recovering on a bond pursuant to § 34–28–30. *Bethlehem Rebar Industries, Inc.*, 582

A.2d at 445. In *Vaudreuil*, we focused on § 34–28–30, and we specifically stated:

> "[Section 34–28–30] was clearly designed to remove several of the traditional impediments to recovery on a labor and material bond. Most significantly, the statute abrogates the privity and notice requirements [of § 37–12–2]." *Vaudreuil*, 121 R.I. at 420, 399 A.2d at 1222.

■ We decline to depart from our long-standing precedent. We are mindful of the principle that, "[u]nder the principle of *stare decisis*, this Court always makes a concerted effort to adhere to existing legal precedent." *Pastore v. Samson*, 900 A.2d 1067, 1077 (R.I.2006).[6] In the instant case, however, there is no necessity for us to make such a "concerted effort" to reach the same conclusion as did our forebears. Our understanding of the provisions set forth in §§ 34–28–30 and 34–28–31 is no different today from the understanding of our predecessors some thirty-three years ago, when *Providence Electric Co.* first addressed those sections of our General Laws. Today, as then, it is our belief that §§ 34–28–30 and 34–28–31 were enacted to protect suppliers of labor and/or materials "against the sudden insolvency of the contractor or subcontractor while the provisions of chapter 12 of title 37 do not give such protection to the supplier. It is clear that the Legislature intended to give such protection to a supplier under the provisions of §§ 34–28–30 and 34–28–31." *Providence Electric Co.*, 116 R.I. at 345, 356 A.2d at 486.

If our interpretation of those statutes were as unfaithful to the true meaning of the statutes at issue as Hartford contends on appeal, we have no doubt that the Gen-

---

**6.** Although it is not a jurisprudential principle that admits of absolutely no exceptions, the principle of *stare decisis* is nonetheless one of the most basic norms in our legal system. In the words of Justice Cardozo, "*Stare decisis* is at least the everyday working rule of our law." Benjamin N. Cardozo, *The Nature of the Judicial Process* 20 (1921).

eral Assembly would have intervened and enacted new legislation so as to make clear its intentions. *See, e.g., Barber v. Vose,* 682 A.2d 908, 915 (R.I.1996). Hartford is certainly free at this juncture to seek to persuade the General Assembly that the existing statutory scheme should be altered. We would simply note that "[t]he resolution of that issue resides in the State House and not the courthouse." *Chambers v. Ormiston,* 935 A.2d 956, 974 (R.I. 2007); *see also DeSantis v. Prelle,* 891 A.2d 873, 881 (R.I.2006) ("It is not for this Court to assume a legislative function when the General Assembly chooses to remain silent.").

### Conclusion

For the reasons set forth herein, it is our opinion that Air Distribution was entitled to summary judgment as a matter of law. The Superior Court's summary judgment in favor of Air Distribution is affirmed. The papers in this case may be remanded to the Superior Court.